IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Auto Money North LLC, | ) | Case No. 7:23-02952-JDA |
| | ) | |
| Plaintiff/Counter Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Darin Walters, Carla Walters, Timothy McQueen, Cecilia McQueen, | ) | **ORDER AND OPINION** |
| | ) | |
| Defendants/Counter Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| State of North Carolina, | ) | |
| | ) | |
| Intervenor. | ) | |
| _____ | ) | |

This matter is before the Court on two motions filed by Defendants/Counter Claimants Darin Walters, Carla Walters, Timothy McQueen, and Cecilia McQueen (collectively, "Borrowers"):  a renewed motion to dismiss on abstention grounds or, in the alternative, to stay [Doc. 19; *see* Docs. 22; 26; 37; 39; 40; 42; 46; 66; 84]; and a motion to dismiss for lack of jurisdiction [Doc. 50; *see* Docs. 62; 64].  The motions are ripe for review.

**BACKGROUND**

**North Carolina Statutes**

Several North Carolina statutes are relevant to this action, and the Court begins by identifying them.  Part of the North Carolina Consumer Finance Act ("CFA"), *see* N.C. Gen. Stat. §§ 53-163 et seq., North Carolina General Statute § 53-190 provides, in

relevant part:

> (a) No loan contract made outside this State in the amount or of the value of twenty-five thousand dollars ($25,000) or less, for which greater consideration or charges than are authorized by G.S. 53-173 and G.S. 53-176 have been charged, contracted for, or received, shall be enforced in this State. This subsection, however, does not apply to loan contracts in which all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds occur entirely outside this State.

> (b) If any lender or agent of a lender that makes loan contracts outside this State in the amount or of the value of twenty-five thousand dollars ($25,000) or less comes into this State to solicit or otherwise conduct activities in regard to such loan contracts, then such lender shall be subject to the requirements of this Article.

N.C. Gen. Stat. § 53-190 (the "Extraterritorial Loan Provision").[1]  Also part of the CFA, North Carolina General Statute § 53-166(d) provides, in relevant part, that "[a]ny contract of loan, the making, servicing, or collecting of which violates any provision of this Article, or rule adopted under it, except as a result of accidental or bona fide error of computation is void, and the licensee or any other party in violation shall not collect, receive, or retain any principal or charges whatsoever with respect to the loan."

Part of North Carolina's usury law, *see* N.C. Gen. Stat. §§ 24-1.1, et seq., North Carolina General Statute § 24-2.1(a)–(c) states:

> (a) For purposes of this Chapter, any extension of credit shall be deemed to have been made in this State, and therefore subject to the provisions of this Chapter if the lender offers or agrees in this State to lend to a borrower who is a resident of

---

[1] The statute has been amended several times, resulting in changes to the amount or value of the loan contract necessary to trigger application of the statute.  The most recent amendment, which became effective October 1, 2023, raised the amount from $15,000 to $25,000.  *See* S.L. 2023-61 § 1.

2

this State, or if such borrower accepts or makes the offer in this State to borrow, regardless of the situs of the contract as specified therein.

(b) Any solicitation or communication to lend, oral or written, originating outside of this State, but forwarded to and received in this State by a borrower who is a resident of this State, shall be deemed to be an offer or agreement to lend in this State.

(c) Any solicitation or communication to borrow, oral or written, originating within this State, from a borrower who is a resident of this State, but forwarded to, and received by a lender outside of this State, shall be deemed to be an acceptance or offer to borrow in this State.

Finally, under the North Carolina Unfair and Deceptive Trade Practices Act (the "UDPTA"), *see* N.C. Gen. Stat. §§ 75-1.1 et seq., North Carolina General Statute § 75-16 states that "if damages are assessed" for violation of the UDTPA, then "judgment shall be rendered . . . for treble the amount fixed by the verdict." Additionally, North Carolina General Statute § 75-16.1 states that "[i]n any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee."

Collectively, North Carolina General Statute §§ 24-2.1(a)–(c), 53-166(d), and 53-190 and the UDTPA, are referred to herein as the "North Carolina Statutes."

**The Loan Agreements**

Plaintiff/Counter Defendant Auto Money North, LLC ("AMN") is a South Carolina limited liability company, and its affiliate, AutoMoney, Inc., is a South Carolina corporation. [Docs. 1 ¶¶ 1–2; 26 at 9.] Both have principal places of business in Charleston, South Carolina, and both are "regulated lending entities that make consumer loans . . . secured by vehicle titles" under South Carolina statutes and regulations. [Doc. 1 ¶¶ 1–3.] Darin and Carla Walters (the "Walterses") and Timothy and Cecilia McQueen (the "McQueens")

are all residents of North Carolina.  [*Id.* ¶¶ 5–6.]  AMN alleges that on three occasions the Walterses "voluntarily traveled to [AMN']s store in Landrum, South Carolina for the purpose of negotiating, applying for, and accepting [AMN's] offer of a loan with a security interest in the title to [the Walterses'] vehicle as borrower and co-borrower."  [*Id.* ¶ 7.] Additionally, on another occasion, Darin Walters made the same trip "for the purpose of negotiating, applying for, and accepting [AMN's] offer of a loan with a security interest in the title to [his] vehicle," and "Carla Walters was not a co-borrower on th[at] loan."  [*Id.*] Similarly, on December 13, 2019, the McQueens "voluntarily traveled to [AMN's] store in Fort Mill, South Carolina for the purpose of negotiating, applying for, and accepting [AMN's] offer for a refinance of a loan with a security interest in the title to [the McQueens'] vehicle.  [*Id.* ¶ 10.]

The results of these trips were that in December 2019, the McQueens entered into a loan agreement with AMN secured by the titles to their vehicle [Doc. 1-6]; and in May 2021 and between February and May 2022, the Walterses entered into four loan agreements with AMN secured by the titles to their vehicles [Docs. 1-2; 1-3; 1-4; 1-5].[2] The Loans were all "high-interest loans" with annual rates ranging from 138.959% to 199.65%.  [Docs. 1-2; 1-3; 1-4; 1-5; 1-6.]  As of the date of the Complaint, the McQueens had made payments totaling $28,090.39 during the life of their loan agreement, and the Walterses had made payments totaling $39,385.73 over the course of their four loans, with an unpaid balance of $9,345.98, for which Darin Walters is responsible.  [Doc. 1 ¶¶ 8–9, 11; *see id.* ¶¶ 24–25.]

---

[2]  The five loans are collectively referred to herein as the "Loans."

4

**The Bankruptcy Cases**

On December 2, 2022, AMN filed a Chapter 11 bankruptcy petition.[3]  *See In re: Auto Money North, LLC*, No. 22-03309-hb (Bankr. D.S.C.) ("Bankruptcy Action"); [Docs. 1 ¶¶ 21–26; 50-6].  Three days later, AMN filed a related adversary proceeding.  *Auto Money North LLC v. Abernathy*, No. 22-80047-hb (Bankr. D.S.C.) ("Adversary Proceeding").  The complaint in the adversary proceeding (the "Adversary Complaint") alleges that although AMN's stores are in South Carolina, some of its loans have been made to North Carolina residents, and some of those have resulted in litigation against AMN and AutoMoney, Inc.  Adversary Proceeding Doc. 1 ¶¶ 6, 7, 10, 20, 47, 48, 71.  The Adversary Complaint names approximately 400 defendants (the "Adversary Defendants") and alleges that each is a North Carolina resident.  *Id.* ¶ 6; Adversary Proceeding Doc. 1-1.  It alleges that the Adversary Defendants traveled to a store location in South Carolina for the purposes of negotiating, applying for, and accepting an offer of a loan; that the loan agreements included a choice-of-law provision and a forum selection clause providing that South Carolina law governs; and that once the loans were extended, liens were recorded on vehicle titles with the North Carolina Department of Motor Vehicles.  Adversary Proceeding Doc. 1 ¶¶ 7, 59–62, 64, 66.  It alleges that the Adversary Defendants have brought claims in various forms that allege violations of the CFA, the UDTPA, and North Carolina usury law and that the crux of the claims is the Extraterritorial Loan Provision.  *Id.* ¶¶ 76, 78–79.  It also asserts that that Extraterritorial Loan Provision

---

[3] This Court may take judicial notice of the records in the records in court proceedings. *Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.").

is inapplicable on its own terms insofar as AMN "is a licensed South Carolina title lender that does not (and has not ever) 'come[] into [North Carolina] to solicit or otherwise conduct activities in regard' to title loans as contemplated by the statute." *Id.* ¶ 81 (quoting N.C.G.S. § 53-190). The Adversary Complaint alternatively alleges that application of the Extraterritorial Loan Provision to AMN impermissibly regulates AMN's lending activities within South Carolina's boundaries, violating the United States Constitution's First Amendment, Due Process Clause of the Fourteenth Amendment, and/or Commerce Clause. *Id.* ¶ 82. The Adversary Complaint seeks declaratory relief concerning the application of South Carolina law, the enforceability of the loan agreements, and the unconstitutionality of application of the Extraterritorial Loan Provision to AMN, and also includes a breach of contract claim as to more than 40 defendants whose loans have current balances. *Id.* ¶¶ 83–96.

In January and February 2023, the Walterses and Thomas McQueen filed proofs of claims in AMN's bankruptcy case for $61,047.18 and $74,999, respectively, based on alleged violations of the North Carolina Statutes.[4] [Docs. 1 ¶ 21; 50-6.] The proofs of claims sought four types of relief: "(1) trebled monetary damages in the amount of all loan payments made, (2) monetary damages for violating North Carolina's usury law, (3) voiding of the loan and forgiveness of unpaid amounts, and (4) attorneys' fees." [Doc. 1 ¶¶ 21, 23.] Both the Walterses and Timothy McQueen indicated that the claim amounts did not include interest or other charges; that they were based on the fact that AMN

---

[4] AMN alleges that Cecilia McQueen did not file a proof of claim, but it asserts upon information and belief that she is a necessary party to this action as a co-borrower on the relevant loan agreement. [Doc. 1 at 6 n.1.]

accepted, received, and/or continued to retain payments made by them; that they sought "a total amount not in excess of $75,000"; and that because AMN continued to accept, receive and/or retain payments, and repossess vehicles, they noted that their damages could increase in the future.  [Doc. 50-6 at 3, 6–7, 9, 11–12.]

In February 2023, the Adversary Defendants filed a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing all claims in the adversary proceeding or, in the alternative, for an order of abstention pursuant to 28 U.S.C. § 1334(c)(1) or, in the further alternative, for an order staying the adversary proceeding pursuant to 11 U.S.C. § 305(a).  Adversary Proceeding Docs. 16; 20.  AMN filed a brief opposing the motion.  Adversary Proceeding Doc. 22.  On March 28, 2023, the bankruptcy court granted the motion, concluding that the Adversary Complaint stated a claim for which relief could be granted but ruling that the court would abstain under 28 U.S.C. 1334(c)(1).[5]  Adversary Proceeding Doc. 24 at 9–17.

AMN initially appealed the abstention decision.  Adversary Proceeding Doc. 26. However, on May 22, 2023, the parties jointly stipulated to voluntarily dismiss the appeal under Rule 8023 of the Federal Rules of Bankruptcy Procedure.  [Doc. 9-5.]  The bankruptcy court later dismissed AMN's bankruptcy case on AMN's motion on June 23, 2023.  Bankruptcy Action Doc. 1380.

---

[5] That provision provides: "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

**The Present Action and the State Actions**

AMN filed the present action the same day AMN's bankruptcy case was dismissed. [Doc. 1.]  The present action alleges six claims, which can be categorized into three groups.  [*Id.*]  AMN first seeks a declaratory judgment that "South Carolina law governs the Loan Agreements and that the courts of South Carolina are the only proper venues for any disputes arising under the Loan Agreements" and that the North Carolina Statutes do not preclude enforcement of the Loans, at least in courts outside of North Carolina. [*Id.* ¶¶ 84–86.]  In the alternative, AMN asks the Court to declare and issue corresponding injunctive relief that the North Carolina Statutes violate the Due Process Clause of the Fourteenth Amendment, AMN's right to free speech and association under the First and Fourteenth Amendments, the Full Faith and Credit Clause, and the Commerce Clause of the United States Constitution.  [*Id.* ¶¶ 87–113.]  AMN also brings a claim for breach of contract, seeking money damages "for all injuries sustained as a direct and proximate result of [Borrowers'] breaches or repudiation of the Loan Agreements."  [*Id.* ¶¶ 114–19; *id.* at 34.]

Later on the same day that AMN filed the present action, the Walterses and 42 other plaintiffs filed suit in state court in Guilford County, North Carolina, against AMN and its affiliate, AutoMoney, Inc., alleging violations of the CFA and the North Carolina usury law, seeking treble damages and attorneys' fees under the UDTPA (the "*White* Case").  [Docs. 9-6; 19-1 at 16–17 n.3; 22 at 14.]  Three days later, on June 26, 2023, the McQueens and 43 other plaintiffs filed suit in state court in Guilford County, North Carolina, against AMN and AutoMoney, Inc., alleging the same claims asserted in the *White* Case and also seeking treble damages and attorneys' fees under the UDTPA (the

"*Moore* Case").  [Doc. 9-7.]  The complaints in both the *White* Case and the *Moore* Case (collectively, the "State Actions") allege that "[e]ach [p]laintiff stipulates that he or she is not seeking, will not seek and will not accept damages in excess of $75,000.00."  [*Id.* at 11; Doc. 9-6 at 10.]

In the present action, on July 30, 2023, Borrowers filed two motions to dismiss. [Docs. 7; 9.]  In one motion, Borrowers requested that the Court dismiss the present action with prejudice for failure to state a claim under the doctrine of collateral estoppel based on the prior abstention ruling in the adversary proceeding.  [Docs. 7; 8.]  In the other motion, Borrowers requested that the Court dismiss AMN's Complaint on abstention grounds.  [Docs. 9; 9-1.]

Meanwhile, on September 14, 2023, the parties in the State Actions jointly moved the North Carolina Superior Court for an Order pursuant to Rule 2.1 of the General Rules of Practice of the Superior and District Courts recommending to the Chief Justice of the Supreme Court of North Carolina that the actions be designated as exceptional actions and assigned to Superior Court Judge Paul Ridgeway of Wake County, North Carolina, for further proceedings.  [Doc. 82-1.]  The Superior Court granted the motion, and on September 27, 2023, the Chief Justice entered an Order designating the actions as exceptional and assigning them to Judge Ridgeway.  [Doc. 82-2.]

In the present action, the Honorable Joseph Dawson III denied both motions to dismiss on October 18, 2023.  [Doc. 15.]  To Borrowers' argument for abstention based on purportedly parallel state actions, Judge Dawson applied the *Colorado River* abstention doctrine, rather than the factors in *Nautilus Insurance Co. v. Winchester Homes Inc.*, 15 F.3d 371 (4th Cir. 1994), which apply when only declaratory relief is

sought, because AMN states a good-faith and nonfrivolous cause of action for breach of contract in addition to claims for declaratory relief. [Doc. 15 at 3–6 & n.4 ("The Fourth Circuit has said, '*Colorado River*, not [*Nautilus*], must guide a court's decision to abstain from adjudicating mixed complaints alleging claims for both declaratory and nondeclaratory relief.' *vonRosenberg v. Lawrence*, 781 F.3d 731, 735 (4th Cir. 2015), as amended (Apr. 17, 2015). . . . [T]he only potential exception to this general rule arises when a party's request for injunctive relief is either frivolous or is made solely to avoid application of the [*Nautilus*] standard.'" (third alteration in original).] Judge Dawson concluded that abstention was not warranted under the *Colorado River* doctrine because the State Actions were not parallel to the present action given that—at the time of his ruling—nothing in the record showed that the State Actions raised the same legal issues as the present case. [*Id.* at 7–8.] In particular, Judge Dawson noted that there was no record in this Court of AMN having raised a defense or counterclaim for declaratory relief or breach of contract in the State Actions. [*Id.* at 8 & n.5.] Nonetheless, Judge Dawson "reserve[d] the right to revisit" the issue of whether the present case was parallel with the State Actions should circumstances change. [*Id.* at 8.]

Judge Dawson also rejected Borrowers' argument that collateral estoppel applied against AMN based on an abstention ruling in the Adversary Proceeding. [*Id.* at 1 n.1.] As to this issue, Judge Dawson explained that collateral estoppel is an affirmative defense and thus is not properly considered on a Rule 12(b)(6) motion, which is intended only to test the legal adequacy of the complaint. [*Id.*]

On November 1, 2023, Borrowers filed an Answer in the present action and asserted counterclaims alleging violations of the CFA and North Carolina usury law and

seeking treble damages and attorneys' fees under the UDTPA.  [Doc. 16.]  Then, on November 8, 2023, Borrowers filed a "renewed motion for an order dismissing this civil action on abstention grounds or, in the alternative, staying this case."  [Doc. 19.]  To this motion, Borrowers attached motions to dismiss that AMN and AutoMoney, Inc. had filed in the State Actions raising all of the issues that AMN has raised in this case in support of its claims for declaratory relief.  [Doc. 19-2.]

As that motion remained pending, on November 27, 2023, AMN filed a motion to dismiss Borrowers' counterclaims.  [Doc. 23.]  On January 4, 2024, the State of North Carolina filed a notice of intervention to defend the constitutionality of North Carolina statutes.  [Doc. 38.]  Borrowers then filed a motion to dismiss the Complaint for lack of jurisdiction on February 6, 2024, contending that the Court lacks both diversity and federal-question jurisdiction.  [Doc. 50.]

This case was reassigned to the undersigned on February 14, 2024.  [Doc. 51.] The parties, including the State of North Carolina, have filed responses, replies, sur-replies, and supplements to the pending motions.  [Docs. 22; 26; 37; 39; 40; 42; 46; 54; 57; 62; 64; 66; 69; 70; 83; 84.]   Additionally, with this Court's permission, on March 19, 2024, the State of South Carolina and Alan Wilson filed an amici curiae brief supporting AMN's motion to dismiss Borrowers' counterclaims, and on March 28, 2024, Borrowers filed a response to the amici curiae brief.  [Docs. 73; 75; 79.]

During the pendency of the present action, the State Actions have also progressed. On March 24, 2024, Judge Ridgeway entered a case management order setting various deadlines for the completion of discovery and dispositive motions.  [Doc. 82-3.]  AMN and AutoMoney, Inc. have filed motions under Rule 12(b) of the North Carolina Rules of Civil

Procedure, and those motions remain pending.  [*See* Docs. 82 at 2–3; 82-3 at 7 ¶ 10(b).] Currently, discovery is open in the State Actions only for purposes of determining whether personal jurisdiction and venue are proper.[6]  [*See* Docs. 82 at 2–3; 82-3 at 8 ¶ 13(a).]

## DISCUSSION

**Borrowers' Jurisdiction Motion**

The Court first addresses Borrowers' motion to dismiss for lack of subject-matter jurisdiction, which alleges that this Court possesses neither diversity nor federal-question jurisdiction.  [Doc. 50.]

### *The Rule 12(b)(1) Standard*

A motion to dismiss under Rule 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded.  Fed. R. Civ. P. 12(b)(1).  The court may dismiss a case for lack of subject-matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (internal quotation marks omitted).

Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised in two ways: "facial attacks" and "factual attacks."  *See Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *overruled on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988).  A facial attack questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction; the court analyzes a facial attack as it would

_____

[6] The parties last reported the status of the State Actions in a status report filed May 21, 2024.  [Doc. 82.]

a motion to dismiss under Rule 12(b)(6) such that "[t]he allegations in the complaint are taken as true, and materials outside the pleadings are not considered." *Id.*  A factual attack challenges the truthfulness of the jurisdictional allegations in the complaint, *id.*, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists."  *Id.*; *see also Dira v. Deutch*, No. 97-1119, 1998 WL 276236, at *1 (4th Cir. May 26, 1998) ("When such 'factual' challenges are asserted, a trial court may go beyond the allegations of the complaint, weigh the evidence, and satisfy itself as to its jurisdiction to hear the case.").  A dismissal should be granted only in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond, Fredericksburg*, 945 F.2d at 768.

### The Law Relating to Jurisdiction

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute."  *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998).  There is no presumption that a federal court has jurisdiction over a case, *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999), and a plaintiff must allege facts essential to show jurisdiction in his pleadings, *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Dracos v. Hellenic Lines, Ltd.*, 762 F.2d 348, 350 (4th Cir. 1985) ("[P]laintiffs must affirmatively plead the jurisdiction of the federal court."). As such,

Federal Rule of Civil Procedure 8(a)(1) requires that a complaint provide "a short and plain statement of the grounds for the court's jurisdiction."

Generally, federal district courts have original jurisdiction over two types of cases, referred to as (1) federal question cases, pursuant to 28 U.S.C. § 1331, and (2) diversity cases, pursuant to 28 U.S.C. § 1332.  As to cases involving a federal question, § 1331 provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "[F]ederal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint."[7]  *Burbage v. Richburg*, 417 F. Supp. 2d 746, 749 (D.S.C. 2006) (internal quotation marks omitted).  Diversity jurisdiction, on the other hand, requires (1) complete diversity of the parties and (2) an amount in controversy in excess of $75,000.  *See* 28 U.S.C. § 1332(a).  The parties are completely diverse only where "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1991).

Regarding diversity, the amount in controversy stated in a plaintiff's complaint generally controls, so long as it is made in good faith.  *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010).  A federal court may dismiss a claim for failing to meet the amount-in-controversy requirement only if "it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed."  *Id.* (internal quotation marks omitted).

When multiple plaintiffs assert claims against a single defendant, the claims may not be aggregated to satisfy the jurisdictional amount unless the claims are "based on a

---

[7] "It is not enough that there may be a defense grounded in federal law or that the complaint anticipates and rebuts such a defense."  *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 302 (4th Cir. 2016).

common, undivided interest." *McKinney v. Stonebridge Life Ins. Co.*, No. 4:06-cv-00029, 2006 WL 2565593, at *2 (W.D. Va. Sept. 1, 2006), *Report and Recommendation adopted by* 2006 WL 2819642 (W.D. Va. Sept. 28, 2006). Similarly, the claims of a single plaintiff against multiple defendants may be aggregated to reach the jurisdictional amount only if the defendants are jointly liable to the plaintiff on each of the claims. *Slumber Parties, Inc. v. Cooper*, No. RDB-12-00791, 2012 WL 2915110, at *6 (D. Md. July 16, 2012).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013) (internal quotation marks omitted). The Fourth Circuit follows the "either-party rule" when considering the amount in controversy related to a declaratory judgment action. *See Dixon v. Edwards*, 290 F.3d 699, 710–11 (4th Cir. 2002); *United Specialty Ins. Co. v. BKJ Express, LLC*, No. 5:21-cv-00049, 2022 WL 18702, at *4 (W.D. Va. Jan. 3, 2022); *see also Gov't Emps. Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964) ("[T]he amount in controversy is the pecuniary result to either party which [a declaratory] judgment would produce."). Under that rule, the court may consider either the value of the right at issue to the plaintiff, the cost to the defendant, or both to determine the amount in controversy. *United Specialty Ins. Co.*, 2022 WL 18702, at *4.

### Analysis

Borrowers concede that there is complete diversity between the parties. [Doc. 50-1 at 15.] At issue is the amount in controversy, which the Complaint alleges "exceeds $75,000.00." [Doc. 1 ¶ 12.] As stated, AMN asserts a breach of contract claim as well as claims for declaratory and injunctive relief, and the objects of the litigation are the

Loans, the interest rates charged, and AMN's right to collect on the outstanding balances. The Walterses and Thomas McQueen took the position in AMN's bankruptcy case that the Loans are invalid pursuant to North Carolina law, and therefore, they are entitled, among other relief, to the return of all payments on the Loans, the voiding of the remaining loan balance, and treble damages and attorneys' fees under the UDTPA.  [*Id.* ¶¶ 21, 23.]

AMN alleges that, as of the date of the Complaint, the McQueens had made payments totaling $28,090.39 during the life of their loan agreement, and the Walterses had made payments totaling $39,385.73 over the course of their four loans, with an unpaid balance of $9,345.98, for which Darin Walters is responsible.  [*Id.* ¶¶ 8–9, 11; *see id.* ¶¶ 24–25.]  On these facts, the Court concludes that AMN's claim seeking a declaration that North Carolina law does not apply to the Loans or, even if it does apply, North Carolina law does not void the Loans [*id.* ¶¶ 81–86] is sufficient, by itself, to meet the jurisdictional amount as to the McQueens and as to the Walterses.  If North Carolina law does apply to the Loans and Borrowers prove that the Loans were in violation of the UDTPA, they could be entitled to treble damages, and the Court would have discretion to award attorneys' fees.  N.C. Gen. Stat. §§ 75-1.1, 75-16.  Treble damages regarding their respective payments made on the Loans would be enough to bring AMN's potential liability over $75,000 as to the McQueens and as to the Walterses separately.[8]  *See Dow Agrosciences LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003) (holding that a declaratory judgment action satisfied the jurisdictional amount as to three declaratory judgment defendants partly because the declaratory judgment action aimed to prevent the declaratory judgment defendants' claims for treble damages), *vacated and remanded on*

---

[8] $39,385.73 tripled is $118,157.19, and $28,090.39 tripled is $84,271.17.

*other grounds*, 544 U.S. 431 (2005); *see also R.L. Jordan Oil Co. of N.C., Inc. v. Boardman Petroleum, Inc.*, 23 F. App'x 141, 145 n.3 (4th Cir. 2001) ("When calculating the amount in controversy, the district court should consider any special or punitive damages, such as treble damages, available to" the plaintiff); *Quality Labels & Packaging, Inc. v. Wells Fargo Bank, N.A.*, No. 1:19-cv-210, 2019 WL 2992219, at *3 (M.D.N.C. July 9, 2019) ("Treble damages and punitive damages are generally included within the amount in controversy when the plaintiff is permitted to recover those damages under applicable law.").

Borrowers argue that the value of the object of the litigation in the present case is limited to the amount of their proofs of claims in AMN's now-dismissed bankruptcy case.[9] [Doc. 50-1 at 16–18.]   However, the Court knows of no reason why that would be. Borrowers offer no support for the proposition that their potential damages at the time they filed their proof of claims in January and February 2023 are the same as their potential damages at the time this action was filed, just before the State Actions were filed.  Indeed, the proofs of claims explicitly recognized that the amount of damages could increase as payments continued to be made [Doc. 50-6 at 6, 11], and the Walterses continued to make payments on their loans between the time that they filed their proof of claim and the date AMN filed this action [Doc. 62-1 at 11–12].  Additionally, to the extent that Borrowers chose to limit their bankruptcy claim to an amount less than the total damages they could potentially recover, Borrowers identify no reason why such a

---

[9] As noted, the addenda to the Walterses' and Thomas McQueen's proofs of claims each state the maximum amount of monetary relief being sought was a "total amount not in excess of $75,000.00."  [Doc. 50-6 at 7, 12.]

limitation would bind them outside the context of the bankruptcy case, which had already been dismissed when the present action was filed.[10]

Borrowers also contend that AMN cannot satisfy the jurisdictional amount because in the State Actions—which were filed shortly after the present action—Borrowers stipulated that they are "not seeking, will not seek and will not accept damages in excess of $75,000." [Docs. 64 at 4–5; 64-4 at 20; 64-5 at 10.] However, even assuming that these stipulations should be considered as capping the value of the object of the litigation,[11] that still leaves the issue of attorneys' fees. "[A]ttorneys' fees may be considered as part of the jurisdictional amount requirement even though the statute provides that the [jurisdictional] amount shall be calculated 'exclusive of interest and costs.'" *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983) (quoting 28 U.S.C. § 1332(a) and citing *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199 (1933)); *see Meadows v. Nationwide Mut. Ins. Co.*, No. 1:14-cv-04531, 2015 WL 3490062, at *5 (D.S.C. June 3, 2015)). Even assuming the Walterses and the McQueens were each

---

[10] Borrowers rely on three cases in which the plaintiffs brought suit in state court, the defendants removed to federal court based on diversity jurisdiction, and the district court remanded the cases to state court based on the plaintiffs' stipulations that, *in the case for which jurisdiction was in question*, they were not seeking, and would not accept, an award of more than $75,000. [Doc. 64 at 5–6 (citing *Galloway v. Bank of Am. Corp.*, No. 6:23-04773-HMH, 2023 WL 7308538 (D.S.C. Oct. 23, 2023); *McDonald v. Automoney, Inc.*, No. 1:21CV114, 2021 WL 5599501 (M.D.N.C. Nov. 20, 2021); *Clifton v. Allen*, No. 9:17-cv-02920-DCN, 2018 WL 3095026 (D.S.C. June 22, 2018)).] Thus, in those cases, the courts were not called upon to decide whether a stipulation in a previously dismissed case capping the size of the potential award could bind the plaintiffs in a later-filed case.

[11] AMN argues that Borrowers' stipulations in the State Actions cannot deprive this Court of jurisdiction because AMN, as the plaintiff here, is master of its claim. [Doc. 62 at 18.] AMN also argues that "[j]urisdiction is determined by the filing of the Complaint, and post-filing events cannot rescind this Court's proper subject-matter jurisdiction at the time of the commencement of the action." [*Id.* at 19.]

limited to recovering $75,000 in *damages* for their claims, a fee award of even $1 would be sufficient to bring them over the jurisdictional amount.

Borrowers contend that the prospect of any fee award on the claims AMN seeks to prevent is too speculative to be used to meet the jurisdictional amount.  [Doc. 50-1 at 17–18.]  The Court disagrees.  The question before the Court is whether Borrowers have shown *to a legal certainty* that the value of the object of the litigation here cannot exceed $75,000.  *See JTH Tax, Inc.*, 624 F.3d at 638.  The potential for a fee award in the State Action in addition to $75,000 in damages prevents Borrowers from making such a showing.[12]

---

[12] Borrowers cite several cases in support of their argument that an award of attorneys' fees is too speculative to impact the value of the object of litigation in this case.  [Doc. 50-1 at 17.]  However, these cases do not stand for the general proposition that attorneys' fees are inherently too speculative to be used to satisfy the jurisdictional amount.  Rather, each of the cited cases relied on facts specific to that particular case that made it particularly unlikely that there would be a fee award sufficient to bring the total award up to the jurisdictional threshold.  *See McDonald v. Automoney, Inc.*, No. 1:21CV114, 2021 WL 5599501, at *3 n.1 (M.D.N.C. Nov. 30, 2021) ("That Plaintiffs' counsel would expend almost 400 hours on this case is nothing more than speculation by Defendants, which is insufficient to establish jurisdiction.  Defendants have filed declarations of attorney's fees of Plaintiffs' counsel in other related cases in an attempt to establish federal jurisdiction.  None of those documents reflect that Plaintiffs' counsel expended anywhere near 400 hours of work." (internal citations omitted)); *Cannon v. AutoMoney, Inc.*, No. 1:19-cv-877, 2020 WL 3105183, at *5 (M.D.N.C. May 12, 2020) (explaining why it was "highly unlikely" that attorneys' fee awards could be of sufficient size to reach the jurisdictional amount), *Report and Recommendation adopted by* 2020 WL 3104352 (D.S.C. June 11, 2020); *Stone v. AutoMoney, Inc.*, No. 1:19-cv-1035, 2020 WL 13582170, at *4 (M.D.N.C. May 12, 2020) (same), *Report and Recommendation adopted by* 2020 WL 13582169 (M.D.N.C. June 11, 2020).  In this case, in contrast, the Court notes that AMN has submitted evidence that, as of May 2023, Borrowers' counsel has already stated that they claimed $16,373.58 in attorneys' fees just related to the Walterses and $12,640.68 related to Timothy McQueen.  [Doc. 62-1 at 3–4 ¶¶ 7–8, 17.]

In sum, for the reasons discussed, the Court concludes that it possesses diversity jurisdiction over this case, and the Court therefore denies Borrowers' Rule 12(b)(1) motion.[13]

**Borrowers' Abstention Motion**

Borrowers argue that, if this Court possesses subject-matter jurisdiction, it should dismiss or, alternatively, stay this case under the *Colorado River* abstention doctrine. [Docs. 19-1 at 5–18; 26.]

### *The Law Relating to Abstention*

The Court considers Borrowers' arguments for abstention in view of the well established Supreme Court precedent that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 188–89.

"Despite what may appear to result in a duplication of judicial resources, the rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."

---

[13] Because the Court concludes that it possesses diversity jurisdiction, it need not address federal-question jurisdiction.

*Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 248 (4th Cir. 2013) (internal quotation marks omitted).  "Under the *Colorado River* abstention doctrine, a district court may abstain from exercising jurisdiction in the exceptional circumstances where a federal case duplicates contemporaneous state proceedings, and wise judicial administration, giving regard to conservation of judicial resources, and comprehensive disposition of litigation clearly favors abstention."  *Hayes v. JP Morgan Chase Bank*, C/A No. 3:13-cv-1884-JFA, 2014 WL 4198897, at *3 (D.S.C. Aug. 20, 2014) (footnote omitted).

In considering whether such exceptional circumstances exist, a court must first decide whether the state and federal actions are parallel.  *vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017).  "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."  *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934 (4th Cir. 1992) (internal quotation marks omitted).  On the other hand, they "do not qualify as parallel if they differ in scope or involve different remedies." *vonRosenberg*, 849 F.3d at 168.  "If there is any serious doubt that the state action would resolve *all* of the claims, it would be a serious abuse of discretion to abstain."  *Id.* (internal quotation marks omitted).

If the party seeking abstention shows that the suits are parallel, the court must carefully balance the relevant factors prior to abstaining, "with the balance heavily weighted in favor of jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).  Those factors include

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of the others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action;

21

(5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463–64 (4th Cir. 2005). The court also must "consider the extent to which either action was initiated as a defensive tactical maneuver." *SafePort Ins. Co. v. Macko*, No. 9:21-cv-00131-DCN, 2021 WL 5828045, at *5 (D.S.C. Dec. 8, 2021) (internal quotation marks omitted).

### *Whether the Present Case is Parallel to the State Actions*

The Court begins with the question of whether this case and the State Actions are parallel. In this Court's prior Order denying Borrowers' motion to dismiss on the basis of abstention (the "Prior Order"), the Court noted that "for purposes of determining whether the actions are parallel, even though the State Actions include additional parties, the parties are substantially the same." [Doc. 15 at 7.] Nonetheless, the Court concluded that the cases did not present the same legal issues because "the breach of contract and [c]onstitutional questions affirmatively asserted in [AMN's] [C]omplaint with this Court were not raised in the complaints of the State Actions." [*Id.* (internal quotation marks omitted).] Although it remained possible at that time that those issues would be raised in the State Actions, the Court ruled that the fact that nothing in the record showed they had been raised prevented the State Actions from being parallel with the present case for the purposes of *Colorado River* abstention. [*Id.* at 8.]

Since issuance of the Prior Order, Borrowers have provided this Court with motions to dismiss that AMN and AutoMoney, Inc. filed in the State Actions on the same bases that AMN offers in support of its requests for declaratory and injunctive relief in the present case. [Doc. 19-2.] However, as AMN points out, as of the time of filing its opposition

memorandum, AMN still had never brought a breach of contract claim in a North Carolina court against a borrower, and neither had AutoMoney, Inc.  [Doc. 22 at 6.]  Indeed, AMN notes that it had filed at least eight answers in North Carolina state court cases without asserting breach of contract counterclaims, and Borrowers offer no reason to believe that the breach of contract claims will ever be asserted in North Carolina state court.  [*Id.* (citing Docs. 9-8; 13-4).]  AMN explains that the North Carolina Statutes contain specific language that "seemingly prevents [AMN] from asserting counterclaims in North Carolina that it may . . . assert[] in this Court."  [*Id.*]  Namely, North Carolina General Statute § 53-190(a) provides that "[n]o loan contract made outside this State [under certain circumstances alleged by Borrowers] shall be enforced in this State."  Thus, AMN contends that if it "wishes to enforce its loan-related rights, it might not have enforcement options available in North Carolina state courts" and "[i]ts only certain option is a suit like this one in a *South Carolina federal court*."  [*Id.*]

On reply, Borrowers do not deny that North Carolina General Statute § 53-190(a) could potentially prevent AMN from enforcing its loan-related rights in North Carolina state courts.  They merely argue that AMN "alleges in its Complaint that all activities giving rise to the title loans at issue took place in South Carolina."  [Doc. 26 at 2 n.1.]  Borrowers contend that if AMN's allegation were "true – which it is not – the safe harbor provision contained in [the statute, which applies to 'all contractual activities [that] occur entirely outside North Carolina,'] would apply."  [*Id.*]  The Court notes that this argument would appear to be an acknowledgement by Borrowers that § 53-190(a) has the potential to prevent AMN from enforcing its loan-related rights in North Carolina state court.

In the end, however, the Court need not determine whether the present case and the State Actions are parallel for the purposes of applying the *Colorado River* doctrine because, even if they were, the relevant factors would not justify abstention.[14]  It is to those factors that the Court now turns.

### Whether the Relevant Factors Justify Abstention

The first factor, relating to *in rem* jurisdiction, provides no support for abstention because the subject matter of the litigation does not involve property where the first court may assume *in rem* jurisdiction to the exclusion of the others.[15]  *See Chase Brexton Health Servs., Inc.*, 411 F.3d at 465.

The second factor, convenience of the federal forum, weighs against abstention. As AMN has argued, the driving distance to the courthouse in Greenville, South Carolina, for all of the parties is shorter than the distance to the courthouse in Wake County, North Carolina, where the State Actions have been assigned to Judge Ridgeway after being designated as complex.[16]  [Doc. 22 at 8–9.]

---

[14] Borrowers further argue that because AMN alleges that only Darin Walters owes it money, the present case is at least parallel to the litigation as to Carla Waters and the McQueens and the Court should thus abstain at least as to those Borrowers.  [Doc. 26 at 3.]  Because the Court concludes that the relevant factors weigh against abstention, the Court need not address this argument.

[15] Borrowers argue that this factor favors abstention because "Auto Money has filed liens with the [North Carolina Department of Motor Vehicles] on [Borrowers'] North Carolina issued titles to their motor vehicles, which vehicles are owned, registered and garaged in North Carolina" and "[o]nly North Carolina has jurisdiction to perfect [AMN's] security interests."  [Doc. 19-1 at 13.]  However, this Court has not been asked to determine the validity of any liens.  Moreover, their validity is immaterial to the issues in this case, and determining their validity would not involve assuming *in rem* jurisdiction over property in any event.

[16] AMN asserts that the distances from the courthouse in Greenville to AMN's Charleston, South Carolina, headquarters; to its Landrum, South Carolina, store—the place of the Walterses' loans; and to AMN's Fort Mill, South Carolina, store—the place of the

The third factor, concerning piecemeal litigation, is neutral. AMN notes that Borrowers have filed dozens of state court cases involving different borrowers, but none of those cases involves a set of issues as broad as this case, which includes AMN's breach of contract claim.[17] [*Id.* at 9]; *see Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 102 (2d Cir. 2012) ("[T]he twenty separate state actions in three different New York counties are already in some sense 'piecemeal'; the single federal case, by contrast would go to the heart of all these issues in these cases. Arguably, therefore, this *Colorado River* factor might even cut against abstention."). Additionally, although bringing this action in federal court creates the potential for differing results in the different jurisdictions, the "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal

---

McQueens' loan—are all significantly shorter than the distances from the courthouse in Wake County. [Doc. 22 at 8.] AMN further contends that the courthouse in Greenville is also significantly closer for Borrowers. [*Id.*] On reply, Borrowers do not dispute these facts or AMN's analysis of how they show that the inconvenience factor weighs against abstention. [Doc. 26.]

[17] Borrowers assert that "all of the plaintiffs in the North Carolina litigation, including [Borrowers] here, have joined with [AMN] and AutoMoney, Inc. in requests that those cases be deemed exceptional under Rule 2.1 of [t]he North Carolina General Rules of Practice and assigned to one North Carolina Superior Court Judge for case management purposes and ultimate disposition, including referral of [AMN's] constitutional challenges to a North Carolina three[-]judge panel." [Doc. 26 at 9–10.] The parties agree that whether the cases will be transferred to a three-judge panel "is dependent upon: a) Judge Ridgeway making a determination that the [d]efendants have actually raised facial [constitutional] challenges (*Holdstock v. Duke University Health System, Inc.*, 841 S.E.2d 307, 315 ([N.C. Ct. App.] 2020))" and "b) determination by Judge Ridgeway of whether to refer the matter to the three-judge panel at the 12(b)(6) stage or to defer any referral to a three-judge panel until other matters in the case are resolved." [Doc. 82 at 3.] In the end, however, whether the State Actions are transferred to a three-judge panel is not a significant consideration concerning the factor of piecemeal litigation. Regardless of whether the cases are transferred, the continuing litigation of the present case will represent an additional adjudication of many of the significant issues present in the State Actions.

jurisdiction." *Colo. River*, 424 U.S. at 816. For this factor to weigh in favor of abstention, the "retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly illsuited for resolution in duplicate forums." *Gannett Co. v. Clark Constr. Grp.*, 286 F.3d 737, 744 (4th Cir. 2002). The Court concludes, however, that the overlap between this case and the State Actions "is not any more problematic than it would be in any other matter involving concurrent litigation." *Tyco Fire Prods. LP v. AIU Ins. Co.*, No. 2:23-2384-RMG, 2023 WL 8720000, at *4 (D.S.C. Dec. 18, 2023); *see Gordon v. Luksch*, 887 F.2d 496, 497 (4th Cir. 1989) ("Only in the most extraordinary circumstances . . . may federal courts abstain from exercising jurisdiction in order to avoid piecemeal litigation.").

On this factor, Borrowers further note that "[o]n the day [AMN] filed the instant civil action it also filed eight (8) identical South Carolina civil actions against North Carolina borrowers who have parallel litigation pending in North Carolina against [AMN]" and "[AMN's] affiliate Auto Money, Inc. filed four (4) identical South Carolina civil actions against North Carolina borrowers who also have parallel litigation pending in North Carolina against Auto Money, Inc." [Doc. 26 at 8–9 (footnotes omitted).] Here, however, the Court considers only the effect of the filing of the case that the Court has been requested to abstain from hearing and the state court cases involving the borrowers in this case. Whether the cases filed in South Carolina state court give rise to piecemeal-litigation concerns and whether those cases should be stayed are not questions before this Court.[18]

---

[18] Borrowers further argue, for the first time in their reply brief, that "[t]he Court should not require the North Carolina Attorney General to simultaneously litigate [AMN's] constitutional challenges in two separate forums." [Doc. 26 at 5.] However, Borrowers

The fourth factor, the relevant order in which this Court obtained jurisdiction and the progress made in the respective cases, weighs against abstention.  When this Court obtained jurisdiction, the State Actions had not yet been filed, and both the present case and the State Actions are currently in their early stages.  Still, the Court finds that the activity that has happened in this case, including the State of North Carolina intervention in this case and filing of a brief opposing AMN's motion to dismiss Borrowers' counterclaims [Doc. 57; *see* Doc. 38]; the State of South Carolina and its Attorney General filing an amici curiae brief in support of that motion [Doc. 75]; and the parties' filing of briefs responding to the States' positions [Docs. 69; 79] all weigh in favor of this Court's retaining jurisdiction.[19]

The fifth factor, concerning whether federal or state law provides the rule of decision, weighs against abstention.  Borrowers admit that this case is "ultimately about whether the North Carolina laws at issue are unconstitutional."  [Doc. 19-1 at 3.] Borrowers argue that this Court would not need to determine that the constitutionality of the North Carolina laws if it accepts AMN's assertion that South Carolina law governs.

---

have provided no indication that the North Carolina Attorney General is participating in any of the state court litigation or is inclined to do so.  Borrowers contend that "the Speaker of the North Carolina House of Representatives and the President [Pro Tempore] of the North Carolina Senate are, absent waiver by written notice to the North Carolina Attorney General pursuant to N.C.G.S. § 120-32.6(b), necessary parties to the constitutional challenges [presented in] the North Carolina litigation."  [*Id.* at 6–7.]  As Borrowers appear to acknowledge, however, the Speaker of the House of Representatives and the President Pro Tempore of the Senate "may waive any such representation and decline to participate in the action by written notice to the Attorney General."  N.C. Gen. Stat. § 120-32.6(b).

[19] Borrowers suggest that the Court should consider the status of various North Carolina Court of Appeals decisions as part of the progress of the State Actions.  [Doc. 19-1 at 16–17.]  However, Borrowers do not assert that any of the actions it refers to is parallel to the present case for purposes of the *Colorado River* doctrine.

[*Id.* at 17.] Although that may be true, "[t]he presence of federal-law issues must always be a major consideration weighing against" abstention. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26. Additionally, notwithstanding that this case also presents questions of South Carolina and North Carolina law, "in a diversity case, such as this one, federal courts regularly grapple with questions of state law, and abstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction." *Gannett Co.*, 286 F.3d at 747.

The sixth factor, the adequacy of the state proceeding's ability to protect the parties' rights, weighs against abstention. As noted, North Carolina General Statute § 53-190(a) purports to prevent North Carolina courts from enforcing certain claims that lenders make outside the state. As such, it is possible that North Carolina courts do not provide a forum in which AMN can bring its claims, as Borrowers appear to recognize.

Finally, the Court concludes that Borrowers have not shown that AMN initiated this case as a "defensive tactical maneuver," and therefore this seventh factor weighs against abstention as well. *SafePort Ins. Co.*, 2021 WL 5828045, at *5 (internal quotation marks omitted). "In the ordinary circumstance, courts give this factor credence where a defendant files a federal suit in an obvious attempt to frustrate an ongoing state court action." *Id.* As noted, however, the State Actions had not yet been filed when AMN filed this present case. Rather, it was AMN who filed the first action, and it has explained why it prefers to be in federal court. The Court "has no reason to believe that [AMN], in filing the instant action, is making vexatious use of the federal courts." *Id.* Accordingly, this factor also weighs against abstention.

In sum, the Court concludes that none of the relevant factors support application of *Colorado River* abstention.  The Court's task here "is not to find some substantial reason for the *exercise* of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications, that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *vonRosenberg*, 849 F.3d at 167 (internal quotation marks omitted).  Borrowers have not done so here.  Accordingly, Borrowers' renewed motion to dismiss on abstention grounds or, in the alternative, to stay is denied.[20]

---

[20] In their initial memorandum in support of their abstention motion, Borrowers argue that abstention is justified even if it is not justified under *Colorado River*.  [Doc. 19-1 at 3–5.]  In response, AMN argues that Borrowers' argument in that regard would appear to be based on *Pullman* abstention, but that the requirements of *Pullman* abstention are not satisfied here.  [Doc. 22 at 18–21.]  In reply, Borrowers appear to abandon any argument for abstention other than based on *Colorado River*.  [Doc. 26.]  In any event, *Pullman* abstention is not justified here.  *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941), creates "an extraordinary and narrow exception" to the duty to exercise jurisdiction.  *Sonda v. W. Va. Oil & Gas Conservation Comm'n*, 92 F.4th 213, 219 (4th Cir. 2024) (internal quotation marks omitted).  "The *Pullman* exception may be applied when there is (1) an unclear issue of state law presented for decision (2) the resolution of which may moot or present in a different posture the federal constitutional issue such that the state law issue is potentially dispositive." *Id.* (internal quotation marks omitted). "The central question is whether a state court decision interpreting the relevant law is likely to negate any federal constitutional issue." *NC RSOL v. Boone*, 402 F. Supp. 3d 240, 257 (M.D.N.C. 2019).  Here, Borrowers do not identify any ambiguous question of state law likely to have a "potentially dispositive" effect that could justify abstention.  Moreover, the Court notes that *Pullman* abstention is disfavored in the First Amendment context, where the chilling associated with an unconstitutional abridgement of speech creates further constitutional violations.  *Id.*

## **CONCLUSION**

Based on the above, Borrowers' renewed motion to dismiss on abstention grounds or, in the alternative, to stay [Doc. 19] and their motion to dismiss for lack of jurisdiction [Doc. 50] are both DENIED.[21]

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

June 11, 2024
Greenville, South Carolina

---

[21] AMN's motion to dismiss Borrowers' counterclaims [Doc. 23] remains pending.